UNITED STATES DISTRICT COURT    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

LEROY JAMES SCOTT,

              Petitioner,                              MEMORANDUM
                                                         AND ORDER
                                                         10-CV-05307 (JG)

      -against-

PHILIP HEATH, Superintendant, Sing Sing
Correctional Facility,

              Respondent.
-----------------------------------------------------------x

A P P E A R A N C E S :

    LEROY JAMES SCOTT
        06A5940
        Sing Sing Correctional Facility
        354 Hunter Street
        Ossining, NY 10562
        Petitioner, *Pro Se*

    RICHARD A. BROWN
        District Attorney for Queens County
        125-01 Queens Blvd.
        Kew Gardens, NY 11415
    By:    John M. Castellano
        William H. Branigan
        *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

        Leroy James Scott, who is currently incarcerated in New York's Sing Sing Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction in Queens County Supreme Court on charges of attempted murder in the first degree, robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, reckless

endangerment in the first degree, and criminal possession of stolen property in the third degree.[1] Scott claims that (1) his convictions for attempted murder and reckless endangerment were tainted by erroneous jury instructions permitting the jury to convict him of possessing two mutually exclusive states of mind at once,[2] (2) the prosecution's reverse-*Batson* challenge was improperly granted by the trial judge, and (3) his trial counsel provided ineffective assistance by failing to file favorable pre-trial motions, conduct legal research, properly question witnesses at trial, and develop the record, and by giving poor opening and closing statements at trial.

For the reasons set forth below, the petition is denied.[3]

BACKGROUND

A.  *The Crime and the Arrest*

On June 15, 2005, at about 9:30 p.m., fish store owners Hyun and Eun Lee left their store together on foot. They were nearly home when Scott, who was unknown to the Lees, pointed a handgun in Mrs. Lee's face. She screamed, and Mr. Lee ran toward the couple's home, pursued by Scott. Scott chased Mr. Lee for several blocks, firing four shots from his handgun along the way. Eventually Mr. Lee tripped, sustaining cuts and bruises, and was robbed by Scott of a wallet, a checkbook, and $4100 in cash. A male and a female accomplice meanwhile robbed Mrs. Lee of an additional $2000 in cash and $1000 in food stamps, thereafter fleeing the scene.

---

[1] As discussed below, the two counts of robbery in the first degree and the count of reckless endangerment were later dismissed by the Appellate Division. *People v. Scott*, 70 A.D.3d 978, 978 (N.Y. App. Div. 2010).

[2] Although this contention is somewhat unclear, I assume Scott is making the strongest argument that could be derived from his allegation -- that the verdicts on the attempted murder and reckless endangerment charges were inconsistent and tainted by the challenged jury instruction.

[3] Scott has also moved to stay these proceedings and to hold his petition in abeyance to give him an opportunity to exhaust his state court remedies, as he failed to seek appellate review in the state system of the state court's denial of his ineffective assistance claim. Because I determine that his ineffective assistance claim is meritless, his motion to stay his petition is denied.

After robbing Mr. Lee, Scott fled as well, but he was pursued by an off-duty police officer, Luis Ortiz, who had responded to the gun shots and seen Scott on top of Mr. Lee. Ortiz was joined by other police officers, one of whom saw Scott throw something black behind some bushes as he fled. The officers apprehended Scott, recovering from him a wallet containing Hyun Lee's driver's license, the Lees' checkbook, a cell phone, and $4100 in cash. A revolver was later recovered from the bushes, and ballistics reports linked a bullet found in the Lees' driveway to the revolver.

B.  *The Trial and Sentence*

Scott was charged with attempted murder in the first degree, two counts of robbery in the first degree, four counts of robbery in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, reckless endangerment in the first degree, and criminal possession of stolen property in the third degree.

The trial commenced on September 11, 2006, before Justice Gregory Lasak of the Queens County Supreme Court. During jury selection, defense attorney Kenneth Deane used peremptory challenges to challenge all four Asian jurors on the panel, leading to a reverse-*Batson* challenge by the prosecution. Justice Lasak did not credit Deane's race-neutral reasons for two of the four challenged strikes and granted the reverse-*Batson* challenge as to those two jurors. As for the other two, the prosecutor withdrew the *Batson* challenge for one and the court credited defense counsel's race-neutral reasons for striking the other. Trial Tr. at 241-42.

In the jury instructions regarding the attempted murder count, Justice Lasak instructed the jury to evaluate whether Scott had intended to cause Mr. Lee's death. Regarding reckless endangerment, he instructed the jury to determine whether "[Scott] recklessly engaged

3

in conduct which created a grave risk of death to another person." *Id.* at 930-33. After receiving these instructions, the jury deliberated, and found Scott guilty on all counts. *Id.* at 1021-23.

On October 19, 2006, Justice Lasak sentenced Scott as a second violent felony offender to 25 years for the attempted murder and first-degree robbery counts, 15 years on each of the second-degree robbery counts and the second-degree weapons-possession count, seven years for the third-degree weapons-possession count, and three and one-half to seven years on both the reckless endangerment and third-degree possession of stolen property counts. All sentences were imposed concurrently.

C.  *State Post-Conviction Proceedings*

1.  *The § 440 Motion*

On May 2, 2007, Scott filed a motion challenging his conviction under New York State Criminal Procedure Law ("CPL") § 440.10, alleging that his trial counsel had been ineffective. Specifically, he alleged that his counsel had failed to (1) file favorable pre-trial motions, (2) conduct any legal research, (3) conduct direct and cross-examination of witnesses, (4) give effective opening and closing statements, and (5) properly develop the record.

Justice Lasak of the Queens County Supreme Court denied the motion, holding that Scott had "failed to demonstrate prejudice under the New York State test for ineffective assistance of counsel and ha[d] also failed to provide any objective evidence to support his claims under Federal Law." *People v. Scott*, No. 2345/05, at 5 (N.Y. Sup. Ct. July 10, 2007) (R. 28). Scott did not seek leave to appeal that decision.

4

2. *The Direct Appeals*

In his direct appeal from the judgment of the Supreme Court, Scott argued that his defense counsel was ineffective, that the trial judge had improperly granted the prosecution's reverse-*Batson* claim, that his conviction for reckless endangerment was inconsistent with his conviction for attempted murder, and that the prosecution had not presented sufficient evidence to support either his second-degree robbery or his reckless endangerment convictions.

On February 16, 2010, the Appellate Division modified the judgment of conviction by "vacating the convictions of robbery in the second degree (two [of the four] counts) and reckless endangerment in the first degree," but it otherwise left the judgment intact. *People v. Scott*, 70 A.D.3d 978, 978 (N.Y. App. Div. 2010). The court dismissed the reckless endangerment charge because it concluded that the evidence that anyone other than Mr. Lee was endangered by Scott's conduct was "legally insufficient to permit a rational juror to conclude that the defendant acted with depraved indifference to human life." *Id.* at 979. As for the two second-degree robbery convictions, the court held that "the weight of the evidence does not support the jury's conclusion that Mr. Lee sustained a physical injury," and that "there was no legally sufficient evidence establishing that [Mrs. Lee] sustained a physical injury, a necessary element of that crime;" it therefore dismissed those counts as well. *Id.* The Appellate Division further held that the petitioner's reverse-*Batson* claim was meritless, as "the Supreme Court's determination that the facially race-neutral reasons proffered by defense counsel to explain the peremptory challenges of those jurors were pretextual is entitled to great deference on appeal and will not be disturbed where, as here, it is supported by the record." *Id.* at 980.

Both Scott and the People sought leave to appeal. Scott requested review of the issues decided against him by the Appellate Division, including his reverse-*Batson* challenge and his contention that inconsistent verdicts on the attempted murder and reckless endangerment charges fatally tainted both verdicts.[4] (R. 115.) The People sought leave to appeal only the dismissal of the reckless endangerment count. (R. 126.) In two brief orders, a judge of the Court of Appeals denied each party leave to appeal, thereby finalizing Scott's conviction. *People v. Scott*, 15 N.Y.3d 778 (July 7, 2010) (Lippman, C.J.); *People v. Scott*, 15 N.Y.3d 809 (August 5, 2010) (Lippman, C.J.).

D.   *This Petition*

Scott filed the instant claim for habeas relief on November 12, 2010, asserting three grounds: (1) the prosecution failed to prove that he was guilty of reckless endangerment in the first degree, and the judge's instructions and prosecutor's summation caused the jury to find him guilty of both attempted murder and reckless endangerment, two crimes with mutually exclusive states of mind, in violation of his Fourteenth[5] Amendment rights, Petition at 4; (2) his trial counsel's asserted race-neutral reasons for peremptorily challenging two Asian-American jurors were improperly deemed pretextual by the trial judge, also in violation of the Fourteenth Amendment, *id.*; and (3) his trial counsel was ineffective, *id.* at 4-5.

---

[4]   As in his current habeas petition, Scott did not clearly articulate the relief he sought with regard to the inconsistent verdicts in his direct appeals. I therefore again construe his petition for leave to appeal to request the most sweeping relief available, *i.e.*, the dismissal of both the reckless endangerment and the attempted murder charges.

[5]   Though Scott uses the Roman numeral "XVI" to denote the amendment he invokes, I assume he means the Fourteenth Amendment.

6

Oral argument was held on April 13, 2011. Scott appeared at the argument by videoconference from Sing Sing Correctional Institution, the institution in which he is currently serving his sentence.

DISCUSSION

A.  *The Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[6]

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court

---

[6] This limitation on relief is referred to as "AEDPA deference." *See, e.g., Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006). Further, in addition to the deference owed to state court determinations of fact under § 2254(d)(2), subsection (e) requires that a federal habeas court presume all state court factual determinations to be correct. The petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

7

"identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Elaborating on this standard, the Supreme Court has held that a habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see also id.* at 786-87 (a state prisoner seeking federal habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Richter*, 131 S. Ct. at 785; *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

8

B.  *Scott's Claims*

1.  *The Challenge to the Attempted Murder Conviction*

The state court set aside Scott's reckless endangerment conviction on the ground that the evidence was insufficient to support a finding that Scott acted with the requisite mental state -- depraved indifference to human life. Although Scott's challenge to his attempted murder conviction is not clearly set forth, it appears to have two components.

First, he contends that, in light of the jury charge and the prosecutor's summation, the jury might have found him guilty of attempted murder based on the theory that he acted with depraved indifference to Mr. Lee's life. Since the evidence of that mental state was insufficient, the argument continues, the conviction on that count is flawed. This argument has no merit. First, as I read the charge, to which there was no objection by trial counsel, *see* Trial Tr. at 940, the *mens rea* at issue on the attempted murder count was intent to murder, not depraved indifference. In any event, even if the jury were authorized to find Scott guilty on either factual theory, the insufficiency of the evidence with respect to the depraved indifference alternative would afford no ground for relief because there was indeed sufficient evidence to support a finding that Scott intended to kill Mr. Lee. *See Griffin v. United States*, 502 U.S. 46, 59 (1991).

Second, Scott appears to advance the closely related argument that his since-vacated conviction for reckless endangerment was inconsistent with his attempted murder conviction, thus requiring that the latter be set aside. I disagree. Since the essence of the reckless endangerment count was that the shots fired at Mr. Lee endangered others on the street at the time, there was nothing inconsistent in the jury finding depraved indifference with regard to others while also finding an intent to kill Mr. Lee. More to the point, under federal law, a

conviction on one count of an indictment may not be challenged on the ground that it is inconsistent with the verdict on another count. *United States v. Powell*, 469 U.S. 57, 65 (1984) (citing *Harris v. Rivera*, 454 U.S. 339 (1981)); *see also Dunn v. United States*, 284 U.S. 390, 393 (1932) (where truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt").

2. *The Disallowed Peremptory Challenges*

In *Batson v. Kentucky*, 476 U.S. 79, 94-95 (1986), the Supreme Court held that the Fourteenth Amendment forbids trial counsel from peremptorily challenging jurors on the basis of race. *See also Georgia v. McCollum*, 505 U.S. 42 (1992); *People v. Kern*, 75 N.Y.2d 638 (1990). A party alleging unconstitutional discrimination under *Batson* must first make a *prima facie* showing of discrimination. If that showing is made, then the attorney who exercised the challenged peremptory must set forth a race-neutral explanation for striking the juror at issue. If the explanation proffered is facially race-neutral, then the court must determine if those reasons are pretextual. *Batson*, 476 U.S. at 96-98; *see Barnes v. Anderson*, 202 F.3d 150, 155 (2d Cir. 1999); *People v. Allen*, 86 N.Y.2d 101, 104 (1995).

This exercise places trial judges in a very difficult position. On a threadbare record, based on "facts" adduced at a brief sidebar without the benefit of oath or cross-examination, the judge is charged with making a factual determination regarding whether one of the lawyers at sidebar is (a) a liar about (b) his or her racially discriminatory motives. And since a *Batson*-proof reason for striking a juror doesn't need to be a good reason, just a non-invidious one, this already-fallible procedure seems designed to catch only those who fail (or are unable) to

10

think ahead when they engage in the conduct *Batson* prohibits. *See People v. Brown*, 97 N.Y. 500, 509 (2002) (Kaye, C.J., concurring) (observing that her time as a judge on the New York Court of Appeals, "dealing with countless *Batson* challenges, ha[s] brought me far closer to the perception of Justice Thurgood Marshall, that the 'inherent potential of peremptory challenges to distort the jury process by permitting the exclusion of jurors on racial grounds should ideally lead the Court to ban them entirely from the criminal justice system'" (quoting *Batson*, 476 U.S. at 107 (Marshall, J., concurring))); *see also Miller-El v. Dretke*, 545 U.S. 231, 271-72 (2005) (Breyer, J., concurring) (discussing institutionalized consideration of race in jury selection despite *Batson*, and collecting authorities).

In Scott's case, the trial court went through each of the required steps in evaluating whether defense counsel was engaging in invidious discrimination when he struck all of the Asians from the venire. The court credited defense counsel's asserted race-neutral reasons with respect to one prospective juror, Trial Tr. at 242, but determined that they were pretextual with respect to the other two, *id.* at 242-43, who were then seated.

The trial court made explicit factual findings that defense counsel had failed to offer credible race-neutral reasons underlying the two peremptory challenges that the court disallowed. *Id.* at 241-42. I accord these findings a presumption of correctness, 28 U.S.C. § 2254(e)(1), which Scott may rebut only with clear and convincing evidence to the contrary.[7] *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a

---

[7] The Supreme Court has not yet spoken on the precise relationship between AEDPA's two provisions requiring deference to state courts' findings of fact, *i.e.*, 28 U.S.C. § 2254(d)(2) and (e)(1). *See Wood v. Allen*, 130 S. Ct. 841, 848-49 (2010). Specifically, the Court has not determined "whether the arguably more deferential standard set out in § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)." *Id.* at 849. In my view, § 2254(e)(1) applies where, as here, the state court conducts an inquiry and makes specific findings of fact on the disputed issue. However, because I also conclude that the state court's findings about the pretextual nature of trial counsel's statements were not unreasonable, I would reject Scott's argument under either standard of review.

state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." (citations omitted)). Scott has failed to proffer such evidence here, and thus his challenge to the reverse-*Batson* rulings must be rejected.

3. *Ineffective Assistance of Counsel*

The standard for evaluating claims of ineffective assistance of counsel was established by *Strickland v. Washington*, 466 U.S. 688, 687 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the results unreliable.

Thus, to make out this type of claim, Scott must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id*. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694.

The factual allegations supporting Scott's ineffective assistance claim are thoroughly contradicted by the record. Contrary to Scott's claim on this petition, his trial counsel filed pre-trial motions -- including motions to dismiss the second-degree robbery and reckless endangerment counts that the Appellate Division dismissed on appeal, as well as evidentiary motions that resulted in several suppression hearings. Opp. at 17; Trial Tr. at 774-76

12

(motions to dismiss). The motions themselves, as well as their eventual success in the Appellate Division, demonstrate that counsel engaged in legal research. Counsel also questioned witnesses throughout the trial. *See, e.g.*, Trial Tr. at 561-94 (cross-examination of Mrs. Lee).[8] His opening and closing statements repeatedly reminded the jury to presume Scott's innocence and to place the burden of proof on the prosecution, clearly laid out the defense case, and argued a factual theory[9] upon which the jury could find Scott not guilty of the charges. *See* Trial Tr. at 279-81 (opening); *id.* at 810-39 (closing).[10]

In sum, Scott's ineffective assistance of counsel claim is refuted by the record of proceedings in the trial court and is therefore rejected.[11]

---

[8] To the extent Scott here intends to argue that defense counsel's strategic decision not to present a defense case represented ineffective assistance, his argument is meritless. Scott has failed to demonstrate any reason why I should override the "strong presumption" that trial counsel's decisions as to how to conduct the trial constituted "sound trial strategy." *Cuevas v. Henderson*, 801 F.2d 586, 589 (2d Cir. 1986); *see also id.* at 590 ("'[W]e have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful.'" (quoting *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir. 1983))).

[9] In his state habeas petition, Scott argued that the closing statement was ineffective specifically because counsel failed to argue a theory of misidentification. Not only is Scott's argument factually incorrect regarding his counsel's summation, *see* Trial Tr. at 812 (commencing summation with the argument that "Leroy Scott is the victim of a cruel and tragic mistake. . . . [I]n their zeal to make an arrest, the police arrested the wrong man"), but further, counsel's *entire* opening statement rested on a misidentification theory. *See id.* at 279-81.

[10] The allegation that trial counsel failed to develop the record fails to specify what counsel did wrong or how Scott was prejudiced by it. I therefore do not consider it.

[11] Because the ineffective assistance of counsel claim has no merit, I need not address respondent's claim that it is also procedurally defaulted.

## CONCLUSION

For the reasons stated above, the petition is denied, and Scott's motion to stay and abey his habeas petition in order to exhaust his claims in state court is denied. As Scott has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 9, 2011
      Brooklyn, New York